IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |  | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff/Respondent, | ) | | |
| | ) | | |
| vs. | ) | NO. | 2:16-cr-27 |
| | ) | | 2:20-cv-79 |
| | ) | | |
| ERIC M. DILLON, | ) | | |
| | ) | | |
| Defendant/Petitioner. | ) | | |

## OPINION AND ORDER

Eric Dillon senselessly shot and killed a convenience store clerk named Roger Unton. He later pleaded guilty without the benefit of a plea agreement to federal robbery and causing the murder of Mr. Unton by the discharge of a firearm. In this petition filed under section 2255, Eric Dillon challenges those convictions principally claiming ineffective assistance of counsel. Dillon's claims are either meritless or were already fully considered by the Seventh Circuit on his direct appeal. So his petition will be denied.

### Background

On January 19, 2016, around 3:30 in the morning, Dillon walked into a 7-Eleven convenience store up the street from the federal building in Hammond. He lurked around the store for a bit and then left without incident. [DE 53 at 19.] The next morning, at 4:17 a.m., he walked into the same store brandishing a .22-caliber handgun

with a laser sight. [*Id.* at 17-21.] He wore a black wig and a black face covering. [*Id.*; PSR, DE 33, ¶ 5.] Dillon gestured with his gun toward the cashier, Mr. Unton, and said, "cash register, right now." [PSR ¶ 5.] Unton moved towards the register with his hands up, and Dillon yelled, "open it right now." [PSR ¶ 5; DE 37 (CD submitted for in camera review containing footage of the incident).] Unton was at the register for approximately five seconds before Dillon asked if he had pushed an alert button. [DE 53 at 17-21; DE 37.] Dillon then fired his gun across the counter at Unton multiple times. [*Id.*] Dillon hit Unton twice in the chest and fled the store as Unton fell to the ground. [*Id.*] Unton ultimately died from the gunshot wounds.

Dillon was charged with three counts in the indictment: committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One); using a firearm during a Hobbs Act robbery in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and causing a murder by discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(j) (Count Three). [DE 1.] The government filed a notice that it would not seek the death penalty. [DE 19.] Dillon pleaded guilty without the benefit of a plea agreement to Counts One and Three of the indictment. [DE 24, 26.] Count Two of the indictment was later dismissed by the government.

Section 924(c) provides punishment for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The statute sets out a graduated punishment scheme if the firearm was merely possessed (5

2

year mandatory minimum), brandished (7 years mandatory minimum) or discharged (10 year mandatory minimum). 18 U.S.C. §§ 924(c)(1)(A)(i),(ii),(iii). Additionally, the sentence for a section 924(c) offense must run consecutive to any other sentence. 18 U.S.C. § 924(c)(1)(D)(ii). Section 924(j) continues the graduated penalty scheme. It provides that if a person who, in the course of a violation of section 924(c), causes the death of a person through the use of a firearm, shall either (1) if the killing is a murder, be punished by death or by imprisonment for any term of years or for life; and (2) if the killing is manslaughter, be punished as provided in that section. 18 U.S.C. § 924(j).

The probation department prepared a Presentence Report in anticipation of sentencing. The PSR concluded that a person convicted of violating section 924(j) must be sentenced to at least 10 years in prison, which must run consecutively to any other sentence (like the one for violating the Hobbs Act). It recommended that Dillon's sentence incorporate the consecutive sentence for discharging a firearm as provided by section 924(c)(1)(a)(iii), and did not "group" the counts. [PSR ¶ 80.] The PSR calculated the final offense levels of 240 months' imprisonment (which is the statutory maximum) for the robbery count, and 324-405 months for the section 924(j) count. [*Id.*]

At sentencing, Dillon's counsel raised two objections to the PSR. First, he cited to *United States v. Julian*, 633 F.3d 1250 (11th Cir. 2011) (the only court of appeals that has held the sentence under 924(j) *could* run concurrently to the sentence for the underlying crime of violence), arguing that I had discretion to impose a concurrent sentence on the section 924(j) count. [DE 52, Sent. Tr., at 5-12.] Second, Dillon argued that because the

3

two counts did not have to be imposed consecutively, the two counts should group. [DE 31 at 1.]  The government supported probation's position in the PSR, noting six circuits disagree with *Julian*.  [DE 34 at 2-3.]

At the sentencing hearing, I recognized that the Seventh Circuit has not ruled on this issue yet, but found the other circuit courts more persuasive than *Julian*.  [DE 52 at 6-9.]  Ultimately, I overruled Dillon's objection, and found the section 924(j) sentence had to be consecutive.  After resolving this controversy in the case law, I specifically stated: "I will note that the sentence - - whatever sentence I do give, after I hear from all of you, I'm likely to not alter - - I'm going to alter the sentence to achieve the result I think is appropriate, whether it is consecutive or concurrent, and that makes that decision I just made, I think, somewhat of an academic decision."  [*Id.* at 9.]

After hearing from the victim's family and Dillon, I sentenced Dillon to 240 months on Count One (the Hobbs Act robbery) with a consecutive 270-month term on Count Three (the section 924(j) violation), resulting in a total sentence of 510 months. [*Id.* at 28-35.]  There were both aggravating and mitigating circumstances about this case.  I commented that Dillon committed "a ruthless, vicious, completely gratuitous and unnecessary crime" because there "was no reason to have shot this man, none" and Mr. Unton seemed like a very kind, gentle, and good man.  [*Id.* at 30.]  I stated then, and I still believe, that the "nature and circumstances of the offense . . . just doesn't really get much worse than this."  [*Id.* at 31.]  On the other hand, Dillon did accept responsibility and not put the family through a trial, he was remorseful, and he suffered from severe

4

emotional and psychological issues. [*Id.* at 32-33.] Dillon also had serious issues with drugs and alcohol. [*Id.* at 33.] On balance, I found the "aggravating factors are much more egregious here than those mitigating factors that I have spoke[n] to." [*Id.* at 34.]

Right before I announced the sentence, I clarified:

> [A]s I alluded to earlier, that even if I'm incorrect in the way I have calculated the sentencing guidelines or even if I'm incorrect in the 924(j) having to be consecutive to the Hobbs Act robbery conviction, the sentence that I'm about to announce is precisely the sentence that I would have arrived at in any event because I think it is a just sentence irrespective of whether I precisely calculated the guidelines and, again, irrespective of whether 924(j) has to be consecutive or concurrent. I view that as, frankly, an academic exercise, especially under these circumstances . . . .

[*Id.* at 34.]

Dillon filed an appeal with the Seventh Circuit, raising two issues. Dillon argued: (1) I erred by finding the mandatory minimum of a 10-year consecutive sentence pursuant to section 924(c) applied to cases involving section 924(j); and (2) because the robbery offense and murder offense involved substantially the same harm, I should have grouped the offenses. [Seventh Circuit Case No. 17-2774, DE 11.] The Seventh Circuit affirmed the sentence, finding:

> We have encouraged sentencing judges to state on the record whether the resolution of disputed issues affects the punishment and have held that a statement of irrelevance means that we need not engage in what this judge called an 'academic exercise.' The judge made such a statement here, and we have no reason to doubt that questions about the relation between § 924(c) and § 924(j) are indeed irrelevant to the sentence. Because § 924(j)(1) authorizes 'any term of years,' a sentence of 510 months is lawful whether or not the two counts are grouped, whether or not the minimum sentence under § 924(j) is 120 months, and whether or not the §

5

924(j) sentence must run consecutively to the § 1951 sentence . . . .

*United States v. Dillon*, 720 F. App'x 310, 311 (7th Cir. 2018).

Dillon sought petition for a writ of certiorari on July 20, 2018, which was denied by the Supreme Court of the United States on February 19, 2019. Dillon timely filed this section 2255 motion on February 24, 2020, as the envelope attached to the motion as an exhibit shows it was sent on February 19, 2020. [DE 59-1.]

## Discussion

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

In assessing Dillon's motion, I am mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Riley v. United States*, No. 2:05-cv-380, 2006 WL 2849721, at *2 (N.D. Ind. Sept. 28, 2006) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 133 (10th Cir. 1999)).

Dillon claims that both his trial counsel and appellate counsel provided ineffective assistance of counsel. Any ineffective assistance of counsel claim is governed by the 2-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Dillon must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance" and second, he must show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 690, 694; *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). There is a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

I.   Issues One and Three: Firearms and Restraint Enhancements

Dillon argues his trial counsel erred in failing to challenge the firearms enhancements (ground one) and his appellant counsel erred by failing to challenge the enhancements for restraining the victim (ground three). [DE 59 at 4-5.] He basically contends the enhancements for the use of a firearm and restraint of a victim were erroneously applied, which raised the guideline sentence on his underlying crime.

The PSR provided as follows:

> The guideline for a violation of 18 U.S.C. § 1951(a) is USSG § 2B3.1. The base offense level is 20, pursuant to USSG §2B3.1(a). Additionally, there is a 7-level increase pursuant to §2B3.1(b)(2)(A); a 6-level increase pursuant to §2B3.1(b)(3)(C); and a 2-level increase pursuant to §2B3.1(b)(4)(B). However, pursuant to the cross reference in §2B3.1(c)(1), if a victim was killed under circumstances

7

>that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United State[s], apply §2A1.1 (First Degree Murder), which calls for a base offense level of 43.

[PSR ¶ 16.] In other words, the PSR cites to the possible enhancements noting there could be level increases; however, it also concludes that none of the enhancements actually apply because there was a cross reference which requires the guideline application for first degree murder (§2A1.1) where a victim was killed in circumstances that would constitute murder under section 1111. Without application of either the firearm or restraint enhancements, Dillon's base offense level for Count One was 43, and after subtracting three points for acceptance of responsibility, his total offense level was 40. [*Id.* at 5.]

Although Dillon argues "[t]here is clear evidence" in the PSR that these enhancements were added [DE 67 at 2], he is mistaken. I made it clear at sentencing that I was applying the cross reference to murder when I stated: "I think it is very clear that this is a first-degree murder under 2A1.1." [DE 52 at 11-12.] Trial counsel argued that it would be more appropriate to apply a cross reference to second degree murder, and I considered argument on that, but rejected his position, finding this is a first degree murder under 2A1.1. [*Id.* at 9-12.] I reasoned that a murder that occurs during the course of a robbery is a first-degree murder, and that this was more than just a felony murder because there was some premeditation in the sense that once Dillon thought Unton was pressing the panic button, he made the decision to shoot him. [*Id.* at 11-12.] I concluded, "I just have no question in my mind that this is first-degree murder

8

under 2A1.1 for those reasons, so I'm going to overrule the objection." [*Id.* at 12.]

Consequently I cannot find that trial counsel or appellate counsel gave ineffective assistance when they failed to object to the enhancements for using a firearm or restraining a victim. These enhancements were not used to calculate Dillon's sentence, and had no effect on the sentence.

II.   Issue Two: Trial Counsel's Failure to Object to Facts at Sentencing

Dillon argues that "[t]rial counsel erred by failing to challenge false facts of the crime and circumstances. The Government stated on the record that the victim was shot directly in the chest twice at point blank range while compl[ying] with demands and reaching for a silent alarm." [DE 59 at 4.] Dillon contends this is untrue and can be proven by the video from the scene and the autopsy. [*Id.*] In his reply, Dillon argues he should have received a lesser sentence because he unintentionally and unknowingly killed Unton. [DE 67 at 5-6.] In support, Dillon argues that Unton never complied (and he actually said "no" after Dillon demanded money), Unton made a sudden movement and it was obvious that he had pushed the button, he was only shot twice (and not three times), and Unton was still alive and yelling when he left the premises.

The PSR stated:

> Dillon then pointed the gun at Mr. Unton from a few feet away and appeared to chamber a round as he yelled "Open it right now" with increasingly threatening gestures. Mr. Unton approached the register, and it appears from the video, that Dillon believed that Mr. Unton pressed an alarm button. Dillon then yelled to Mr. Unton, "Did you press the button?" Then Dillon appeared to yell, "you pushing me, you be pushing me" before firing his gun three times directly at Roger Unton and fleeing the store without taking

9

any money or items.

[PSR ¶ 5.]  Dillon's counsel filed an objection to this portion of the PSR, stating:

> Dillon says, "you gonna push the button," "you pushin it," you pushing . . . (inaudible)." 2 shots, not 3, are fired as evidenced by the video playing at 1/8 speed.  It shows the top slide pistol moving back only twice.  Also, the autopsy report shows 3 gunshot wounds A, B, and C.  "Opinion: Gunshot wound "A" could be reentry wound correlated to gunshot wound "C"."  Page 4 of the report.

[DE 31.]

The government then responded to the objection by filing an addendum and noting:

> The Court will have access to the video and audio tape and make its own determination as to what can be heard from Dillon.  It is the Government's position that the PSR is accurate.  From the Government's review of the tape it appears to the Government that three shots were fired.

[DE 34.]

At sentencing, I noted the factual dispute about whether Dillon shot the victim either two or three times.  [DE 52 at 4-5.]  And I said, "I'm going to state on the record that resolving this factual dispute is not going to in any way be taken into account in my sentencing whether - - candidly, whether the defendant shot the victim two times or three times, is not going to be factored into my ultimate sentencing determination."  [*Id.* at 5.] Because the dispute over the number of times Dillon shot Unton was immaterial, Dillon's trial counsel ultimately withdrew his objection.  [*Id.*]  I can't say his performance was deficient, because I specifically stated on the record that my sentence would have been the same — and it would have — whether I determined that Dillon

10

shot Unton twice or three times.

Dillon also argues that the video and audio of the CD reveal facts incompatible with those presented by the government.  For example, Dillon maintains Unton was not compliant, Dillon said different words during the robbery, and his trial counsel should have made additional objections to the facts.  I note that the CD was in evidence.  Before sentencing, I reviewed the recording [DE 37] several times and reached my own conclusions about what it showed and what was said.  Trial counsel did not give ineffective assistance of counsel by not objecting to additional facts, because I reviewed the evidence and reached my conclusions:

> And I do think that a fair reading of the evidence is that Mr. Dillon was really exacting revenge against Mr. Unton for him, what appears to be on the video, going to some device to sound an alarm and that that's what prompted the shooting because the defendant is heard saying, "Did you press the button?" And then he shoots him.  And so a fair reading of that evidence is that he's exacting revenge for the victim taking the steps that he took.

[DE 52 at 30.]

Therefore, I can't say that trial counsel's actions fell below an objective standard of reasonableness, and that but for counsel's errors, the result of the proceeding would have been different.  There can be no prejudice from trial counsel's alleged failure to raise objections to additional facts in the record, because the CD provided an irrefutable account of what occurred, I watched it, and I drew the conclusions that I deemed necessary from the recording.

III.    Issue Four: Abuse of Discretion

11

In ground four, Dillon argues that the underlying crime and the section 924(j) should have been grouped for sentencing purposes, and that if I had used the correct guideline range (which Dillon claims is 324-405 months), I could not have justified an upward variance from that range to the imposed 510 month sentence. [DE 59 at 6.]

As I mentioned previously in this order, the first issue was already raised by trial counsel, as well as appellate counsel, and rejected. I very clearly stated "that 924(j) does have to run consecutive to any sentence that's handed down on - - has to be consecutive to the underlying offense, and so I'm going to overrule the objection." [DE 52 at 8.] But more importantly, I also noted that this was an academic decision, and "even if I'm incorrect in the 924(j) having to be consecutive to the Hobbs Act robbery conviction, the sentence that I'm about to announce is precisely the sentence that I would have arrived at in any event because I think it is a just sentence . . . ." [*Id.* at 34.] Dillon advocated this exact argument on appeal, and the Seventh Circuit rejected it and affirmed the judgment, finding I properly stated on the record that the resolution of this disputed issue did not affect the punishment. *Dillon*, 720 F. App'x at 311. Dillon sought certiorari, and the Supreme Court denied it. *Dillon v. United States*, 139 S. Ct. 1226 (Feb. 19, 2019).

Dillon cannot use this section 2255 motion as a vehicle for getting another bite at the apple. This argument was already made and rejected on direct appeal. *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (section 2255 can't be employed to re-litigate issues decided on direct appeal). Dillon cites no new case law, or any other

12

reason to revisit this issue that the Seventh Circuit already resolved. Consequently, this claim fails.

To the extent Dillon argues if I had calculated the guideline range of 324-405 months, I wouldn't have been able to adequately justify a 20 year variance between that and the imposed 510 month sentence, this argument was not raised on appeal and is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 620-21 (1998) (quotation marks and citations omitted) ("[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent). But even if this argument was not defaulted, I justified my sentencing at length in this case [DE 53 at 28-35] and provided multiple reasons for why I thought this sentence was appropriate due to the factors in section 3553(a) and circumstances of the case, even aside from the discretionary guidelines.

\* \* \*

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Dillon has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

## Conclusion

For the foregoing reasons, Dillon's § 2255 [DE 59] is **DENIED and DISMISSED** with prejudice. The Clerk shall enter final judgment accordingly.

SO ORDERED.

ENTERED: June 26, 2020.

                                         s/ Philip P. Simon
                                         PHILIP P. SIMON, JUDGE
                                         UNITED STATES DISTRICT COURT